UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

───────────────────────────────────

WILLIAM PICINICH,

                         Plaintiff,

            V.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

───────────────────────────────────

**REPORT AND
RECOMMENDATION**

08-CV-578
(LEK/VEB)

## I. INTRODUCTION

In July of 2005, Plaintiff William Picinich filed an application for Disability Insurance Benefits ("DIB") under the Social Security Act. Plaintiff alleges that he has been unable to work since June 2, 2004, due to a work-related injury. The Commissioner of Social Security denied Plaintiff's application.

Plaintiff, through his attorneys, Lachman & Gorton, Peter A. Gorton, Esq., of counsel, commenced this action on June 2, 2008, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On November 5, 2009, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 23).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:  Plaintiff filed an application for DIB on July 6, 2005, alleging disability beginning on June 2, 2004. (T at 23, 53-57).[1]  The application was denied initially and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (T at 23, 43-44, 47).   On June 21, 2007, Plaintiff appeared, along with his non-attorney representative, Patricia Morgan-Rosas, in Oneonta, New York and testified at a hearing conducted before ALJ John Pickett. (T at 23, 288-319). On August16, 2007, ALJ Pickett issued a written decision denying the application for benefits.  (T at 23-31). The ALJ's decision became the Commissioner's final decision on July 14, 2008, when the Appeals Council denied Plaintiff's request for review.  (T at 3-6).

Plaintiff, through counsel, commenced this action on June 2, 2008. (Docket No. 1). Plaintiff filed a supporting Brief on April 1, 2009. (Docket No. 21).  The Commissioner filed a Brief in opposition on April 2, 2009. (Docket No. 22).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be granted and that this case be dismissed.

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 13).

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

## III. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford

3

the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

While the claimant has the burden of proof as to the first four steps, the

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

## B.    Analysis

### 1.    Commissioner's Decision

The ALJ found that Plaintiff met the insured status requirements through December 31, 2009.  (T at 25). The ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 2, 2004. (T at 25).  He concluded that the medical evidence established that Plaintiff had  "severe" impairments, including a right knee impairment and the "residuals from the burn to his body," but that the evidence did not indicate that Plaintiff's impairments met or medically equaled one of the listed impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 25-26).  The ALJ found that Plaintiff has the residual functional capacity to perform sedentary work "except that he is unable to kneel, squat, or crawl and he can lift and carry upwards of twenty pounds on an occasional basis and ten pounds frequently." (T at 26).  The ALJ concluded that Plaintiff

was unable to perform his past relevant work as a factory worker, maintenance worker or laborer.  (T at 30).  The ALJ noted that Plaintiff is a "younger individual" as set forth in 20 CFR § 404.1563. The ALJ determined that considering Plaintiff's age, education (high school), work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform. (T at 30).  As such, the ALJ found that Plaintiff is not under a disability as defined by the Social Security Act.  (T at 31).  As noted above, the ALJ's decision became the Commissioner's final decision on July 14, 2008, when the Appeals Council denied Plaintiff's request for review.  (T at 3-6).

### 2.    Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed.  Plaintiff offers three (3) principal arguments in support of his position.  First, Plaintiff contends that the ALJ did not properly evaluate his testimony concerning his physical limitations. Second, Plaintiff argues that the ALJ improperly discounted his testimony with respect to his emotional impairments.  Lastly, Plaintiff asserts that the ALJ erred by finding that his obesity and emotional impairments were not severe impairments.  Each argument will be addressed in turn.

### a.    Credibility – Physical Impairments

On June 2, 2004, while repairing a valve at work, Plaintiff was severely burned with 180/190 degree water and injured his right knee as he leapt to escape the scalding water. (T at 309-10).   Even after two surgeries to repair his knee, Plaintiff testified that he experiences pain and instability, which he described as a "nuisance." (T at 306).  Although

he can get into a "comfortable spot" when sitting, the pain returns as soon as he stands up. (T at 307).   The ALJ concluded that Plaintiff's statements regarding his physical limitations were "very credible and consistent with the record." (T at 29).   However, although Plaintiff's reported limitations and abilities were found to be credible, the ALJ determined that those limitations did not rise to the level of establishing a disability under the Social Security Act. (T at 29-30).

Plaintiff challenges this finding, arguing that his statements and testimony concerning his limitations do describe a disabling condition.  For example, Plaintiff told consultative examiners that he wakes 2-3 times per night (T at 190) and has pain in his knee with any prolonged standing. (T at 194).  Plaintiff's knee aches after 25-30 minutes of driving. (T at 89).  Plaintiff indicated that his ability to stand, walk, and sit were very much affected by his injury and he stated that he is unable to kneel, squat, or climb stairs. (T at 91).  He experiences knee pain almost all of the time. (T at 95).  Plaintiff tries to use pain medication as little as possible due to side effects. (T at 95).  He feels fatigued due to an inability to sleep.  (T at 314-15).

Courts in the Second Circuit have determined pain is an important element in DIB claims and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged.

<u>See</u> 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR

96-7p; <u>Gernavage v. Shalala</u>, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain

after weighing the objective medical evidence in the record, the claimant's demeanor, and

other indicia of credibility, but must set forth his or her reasons with sufficient specificity to

enable us to decide whether the determination is supported by substantial evidence." <u>Lewis</u>

<u>v. Apfel</u>, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's

contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....

> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the

plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must

consider the following factors in order to make a determination regarding the plaintiff's

credibility:

1. [Plaintiff's] daily activities;
2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3. Precipitating and aggravating factors;
4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6. Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7. Other factors concerning [Plaintiff's] functional limitations and restrictions due

to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y.1987)).

In this case, the ALJ accepted Plaintiff's statements and testimony concerning his pain and physical limitations. The issue here is whether the ALJ's finding that Plaintiff was not disabled, despite his pain and physical limitation, was erroneous in light of the ALJ's finding that Plaintiff was for the most part credible. Even if this issue is answered in the affirmative, this Court finds the ALJ's characterizations and evaluations were nevertheless supported by substantial evidence and should therefore be upheld.

Plaintiff described his knee pain and instability as "very uncomfortable" and a "nuisance," particularly when he did not wear his brace. (T at 306).  He did not state that the pain was unbearable or totally disabling.  Plaintiff indicated that he was able to sit relatively pain free, when he was able to get "in a comfortable spot." (T at 307).  Wearing the knee brace provided him with some relief. (T at 307).  When asked whether he could return to work, Plaintiff said that he could not. (T at 316).  However, his reason was not disabling pain, but rather "I wouldn't be able to perform a job the way I'd want to." (T at 316).  He indicated that he could at least try a job "sitting behind a desk or something," but did not want to attempt such work because "that's really not me." (T at 316).  Plaintiff stated that he was able to prepare simple meals, shop several times a week, do laundry, drive (with pain), and take public transportation. (T at 88, 90, 192).

9

In light of the foregoing, this Court cannot find that the ALJ erred when determining that Plaintiff's testimony, even if fully credited, did not establish a disability within the meaning of the Act.  Although Plaintiff points to testimony referencing his knee pain, there is no dispute that Plaintiff experiences knee pain and that the pain limits his activities.  The ALJ determined that, notwithstanding the knee pain, Plaintiff retained the residual functional capacity to perform sedentary work, with some restrictions.  Plaintiff has not demonstrated any reversible error with regard to this determination.

Moreover, even if the Plaintiff's own testimony is characterized as establishing more severe limitations than those found by the ALJ, the ALJ's ultimate finding would still be supported by substantial evidence.  Any complaint of disabling pain by the Plaintiff would be contradicted by the medical evidence, which strongly indicates that Plaintiff retains the ability to perform sedentary work.

For example, Dr. Roberto Minakawa, one of Plaintiff's treating physicians, released Plaintiff to return to work in May of 2005, with a limitation as to squatting. (T at 149).  In April 2005, Dr. Luis Rodriguez-Beuarcourt completed a Physical Capacities Evaluation form on behalf of Plaintiff, in which he opined that Plaintiff could sit for 8 hours, stand for under 30 minutes, and walk/drive for 1 hour in an 8-hour workday.  (T at 171).  After a follow-up visit in December 2006, Dr. Rodriguez-Beuarcourt asked Plaintiff to return to work and noted that "he would like to do that." (T at 226).  Ronald S. DeThomas, M.D., a consultative examiner, indicated that Plaintiff could not return to full duty work, but could perform a "modified light duty position with no lifting in excess of 8-10 pounds, avoidance of prolonged standing, walking or sitting." (T at 169).  A physical consultative examination was performed in July 2005, by Dr. Mark Henderson, who opined that Plaintiff would be markedly restricted

10

for squatting and kneeling; moderately restricted for prolonged standing and walking on uneven surfaces; moderately limited with respect to heavy carrying; but would have "no difficulty" sitting, handling objects, hearing, or speaking. (T at 198).  Dr. Henderson also found that Plaintiff should have no limitations with regard to short periods of standing and walking on even surfaces. (T at 198).  Dr. Henderson noted that Plaintiff should wear his knee brace and that he should be able to perform light lifting and carrying. (T at 198).

The medical evidence discussed above provides further support for the ALJ's residual functional capacity assessment, which this Court finds should be upheld.

### b.    Credibility – Emotional Impairments

Plaintiff also argues that the ALJ did not properly assess the credibility of his testimony concerning emotional impairments.  In support of this argument, Plaintiff points to mental health records indicating that he was diagnosed with major depression. (T at 261).  Plaintiff also submitted evidence to the Appeals Council documenting psychiatric treatment that Plaintiff received from the Department of Veteran's Affairs after the ALJ issued his decision. (T at 274-287).

When evaluating the severity of mental impairments, the regulations require the ALJ to apply a "special technique" at the second and third steps of the review, in addition to the customary sequential analysis. Kohler v. Astrue, 546 F.3d 260, 265-66 (2d Cir.2008) (citing 20 C.F.R. § 404.1520a).

The technique first requires a determination of whether the Plaintiff has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Then, the ALJ must rate the degree of Plaintiff's functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and

(4) episodes of decompensation. *See* 20 C.F.R. § 404.1520a(c)(3).

These areas are rated on a scale of "none, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4); 416 .920a(c)(4).  A mental impairment is generally found not severe if the degree of limitation in the first three areas is mild or better and there are no episodes of decompensation. § 404.1520a(d)(1). The ALJ must document "a specific finding as to the degree of limitation in each of the functional areas." 20 C.F.R. § 404.1520a(e)(2).  At the third step of the review, the ALJ must consider whether the claimant's mental impairments meet or medically equal § 12.04 of the listed impairments.

To establish that her impairments meet or equal § 12.04 (Affective Disorders), Plaintiff must first satisfy one of the threshold criteria set forth in Subsection (A) of the impairment descriptions.  This typically involves proof of a medically determined mental impairment, combined with evidence of some definite limitation caused by that impairment.

If Plaintiff falls within the threshold parameters of Subsection (A), the inquiry turns to Subsection (B) of § 12.04 to determine whether his "mental impairments result in at least two of the following: (1) marked restrictions in activities of daily living; (2) marked restrictions in social functioning; (3) marked restrictions in maintaining concentration, persistence, or pace; (4) repeated episodes of decompensation, each of extended duration." Paratore v. Comm'r of Social Security Admin., No. 05-CV-1356, 2008 WL 541156, at *5 (N.D.N.Y. Feb. 25, 2008).

The ALJ found that Plaintiff's mental impairment did not have more than a minimal effect on his ability to perform basic work activities. (T at 26).  This Court finds that the ALJ's assessment is supported by substantial evidence. Dr. Dennis Noia, Ph. D. performed a consultative psychiatric examination in July 2005.  He noted that Plaintiff had no history

12

of outpatient psychiatric treatment or psychiatric hospitalizations.  (T at 190).  Dr. Noia indicated that Plaintiff "did not report any significant depressive, manic or anxiety related symptoms, or symptoms of a formal thought disorder or cognitive disfunction." (T at 191).  Plaintiff's mood was described as "relaxed and comfortable," his memory skills were "intact," with "good" insight and judgment. (T at 192).  He was noted to "get along well" with friends and family. (T at 192).  Dr. Noia opined that Plaintiff was capable of understanding and following simple instructions and directions; performing simple tasks and some complex tasks with supervision and independently; maintaining attention and concentration for tasks; regularly attending to a routine and maintaining a schedule; learning new tasks; making appropriate decisions; relating and interacting appropriately with others; and dealing with stress. (T at 192-93).  In sum, Dr. Noia found that his examination results were consistent with mild depression, but that the condition, by itself, did not appear to be significant enough to interfere with Plaintiff's ability function on a daily basis. (T at 193).

Further support for the ALJ's determination is found in the State Agency review consultant's assessment, which indicated that Plaintiff had no more than a slight abnormality of mental function with regard to activities of daily living, maintaining social interaction, and  maintaining concentration, persistence or pace.  (T at 206).

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9

(S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

The Appeals Council considered the additional mental health records submitted by the Plaintiff (T at 7), but concluded that the additional evidence did not provide any reason to review the ALJ's decision. (T at 3).  The Appeals Council shall consider "new and material" evidence if it "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(b); see also § 416.1470(b); Perez v. Chater, 77 F.3d 41, 45 (2d Cir.1996.  The Appeals Council "will then review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b); see § 416.1470(b)."

To obtain a review of the additional evidence, the claimant must establish that "the proffered evidence is (1) new and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative." Sergenton v. Barnhart, 470 F.Supp.2d 194, 204 (E.D.N.Y.2007) (citing Lisa v. Sec'y of Health & Human Servs., 940 F.2d 40, 43 (2d Cir.1991)).

Evidence is "material" if there is "a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently." Id. If the Appeals Council fails to consider new, material evidence, "the proper course for the reviewing court is to remand the case for reconsideration in light of the new evidence." Shrack v. Astrue, 608 F.Supp.2d 297, 302 (D.Conn.2009).

This Court finds no reversible error in the Appeal Council's determination.  Although

14

the treatment records clearly indicate that Plaintiff's mood was depressed and that he felt stressed by his finances, his manner was consistently described as pleasant and cooperative and treatment was noted to improve his mood. (T at 271-82).   The treatment notes do not substantially contradict the findings of Dr. Noia, nor do they establish the sort of marked restrictions in functioning that would be required in order for Plaintiff's impairment to meet or medically equal one of the impairments set forth in the Listings.   Indeed, Plaintiff was assessed with a Global Assessment of Functioning ("GAF") score of 55 (T at 278), which is indicative of moderate, as opposed to marked, limitations of functioning.   See Harris v. Barnhart, No. 06-CV-6523T, 2008 WL 3930432, at *4 (W.D.N.Y. Aug. 21, 2008); Cruz v. Astrue, 07-CV-4658, 2008 WL 597194, *4 n. 10 (E.D.N.Y. Mar. 2, 2008).

### c.    Severity of Obesity & Emotional Impairments

Plaintiff's final argument is that the ALJ failed to properly evaluate the severity of his obesity and emotional impairments.   With regard to Plaintiff's emotional impairments, this Court finds that the ALJ's decision is supported by substantial evidence for the reasons stated above.

As to obesity, Plaintiff notes that he is considered morbidly obese based upon his height (5' 11") and weight (279 lbs). (T at 195, 198).   Plaintiff then offers the conclusory assertion  that the ALJ erred by failing to determine the effect of his obesity on his physical impairments.   This Court finds Plaintiff's argument unpersuasive.

It has been noted that "[o]besity is not in and of itself a disability; [h]owever, [it] may be considered severe-and thus medically equal to a listed disability-if alone or in combination with another medically determinable ... impairment(s), it significantly limits an

individual's physical or mental ability to do basic work activities." <u>Cruz v. Barnhart</u>, No. 04-CV-9011 (GWG), 2006 WL 1228581, at *10 (S.D.N.Y. May 8, 2006); <u>see also</u> SSR 02-1p; 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00(Q) (instructing adjudicators to assess carefully the combined effects of obesity and musculoskeletal ailments during Steps 2 and 4 because "[o]besity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system ... The combined effects of obesity with musculoskeletal impairments can be greater than the effect of each ... considered separately.").

However, the ALJ is required to consider only those impairments that Plaintiff claimed to have, or about which the ALJ received evidence. <u>See</u> <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 552-553 (3d Cir.2005), citing <u>Skarbek v. Barnhart</u>, 390 F.3d 500, 504 (7th Cir.2004); <u>see also</u> 20 C.F.R. 404.1512(a). ("... a remand is not required here because it would not affect the outcome of the case. Rutherford never mentioned obesity as a condition that contributed to her inability to work, even when asked directly by the ALJ to describe her impairments. So even if we assume-in accordance with common sense-that the administrative record evidence of Rutherford's 5' 2" height and her weight of some 245 pounds sufficed to alert the ALJ that obesity could be a factor, Rutherford has not specified how that factor would affect the five-step analysis undertaken by the ALJ, beyond an assertion that her weight makes it more difficult for her to stand, walk, and manipulate her hands and fingers.") <u>Id.</u> at 553.

When asked to state the illness, injuries or conditions that limited his ability to work, Plaintiff did not indicate obesity. (T at 77).  Further, Plaintiff's physicians were aware of his weight (T at 113, 153, 195) and did not indicate any additional limitations arising from his

obesity.  Plaintiff has likewise offered no details concerning any such additional limitations. Indeed, the record indicates that Plaintiff's weight was substantially the same before the alleged onset of disability (275 lbs - T at 141) as it was after that date. (279 lbs – T at 195). The Commissioner is not required to "make assumptions about the severity or functional effects of obesity combined with other impairments." SSR 02-1 p. "Obesity may or may not increase the severity or functional limitations of the other impairment" and the Commissioner's decision must be based upon "information in the case record." SSR 02-1 p; see also Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir.2004). ("Notably, Skarbek does not specify how his obesity further impaired his ability to work, but speculates merely that his weight makes it more difficult for him to stand and walk. Additionally, the ALJ adopted the limitations suggested by the specialists and reviewing doctors, who were aware of Skarbek's obesity. Thus, although the ALJ did not explicitly consider Skarbek's obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions."). Accordingly, this Court finds no reversible error with respect to this portion of the ALJ's decision.

## IV. CONCLUSION

After carefully examining the administrative record, the Court finds substantial evidence supports the Commissioner's decision in this case, including the objective medical evidence and supported medical opinions. It is clear to the Court that the ALJ thoroughly examined the record, afforded appropriate weight to all the medical evidence, including Plaintiff's treating physicians and consultative examiners, and afforded Plaintiff's subjective claims of pain and limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. The Court finds no reversible error and because substantial

evidence supports the Commissioner's decision, the Court recommends that the Commissioner be GRANTED judgment on the pleadings.

Respectfully submitted,

Dated:   February 5, 2010

Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge

**V. ORDERS**

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION**

18

**WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**
Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

February 5, 2010

Victor E. Bianchini
United States Magistrate Judge

19